1  F.T. Alexandra Mahaney, State Bar No. 125984
   Jeffrey W. Guise, State Bar No. 164203
2  Matthew J. Bresnahan, State Bar No. 252127
   WILSON SONSINI GOODRICH & ROSATI
3  Professional Corporation
   12235 El Camino Real
4  San Diego, CA  92130
   Telephone:  (858) 350-2300
5  Facsimile:   (858) 350-2399
   Emails: amahaney@wsgr.com;
6  jguise@wsgr.com; mbresnahan@wsgr.com

7  Attorneys for Plaintiff/Counterclaim Defendant
   INOGEN, INC.
8
                    UNITED STATES DISTRICT COURT
9
                   SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| INOGEN, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>SEQUAL TECHNOLOGIES, INC., a Delaware corporation,<br><br>        Defendant. | CASE NO. 09CV2391 H (JMA)<br><br>**PLAINTIFF INOGEN'S RESPONSE TO THE NEW EVIDENCE OFFERED BY DEFENDANT SEQUAL IN ITS REPLY**<br><br>DATE:   04/07/2010<br>TIME:   10:00 a.m.<br>ROOM:  13<br>JUDGE:  Hon. Marilyn L. Huff |
| SEQUAL TECHNOLOGIES, INC., a Delaware corporation,<br><br>        Counterclaim Plaintiff,<br><br>   v.<br><br>INOGEN, INC., a Delaware corporation,<br><br>        Counterclaim Defendant. | |

## I. INTRODUCTION

Inogen identified in its opposition briefing numerous reasons why Defendant's Motion for Summary Judgment must be denied. Inogen pointed out the various deficiencies in the declarations relied on by Defendant. Now, Defendant has impermissibly attempted to cure some of these deficiencies in its Reply. "It is well established that new arguments and evidence presented for the first time in Reply are waived." *Docusign Inc. v. Sertifi Inc.* 468 F. Supp 2d 1305, 1307 (W.D. Wash 2006) (citing *United States v. Patterson,* 230 F.3d 1168, 1172 (9th Cir. 2000)). Accordingly, the following new declarations submitted for the first time with Defendant's Reply should be stricken under Fed. R. Civ. P. 12(f):

    1. Declaration of Danaher (Document No. 37-3)

    2. Second Declaration of Ritter (Document No. 37-2)

    3. Second Declaration of Bixby (Document No. 37-4)

In the alternative, Inogen respectfully requests this Court to consider Inogen's objections to this new matter, and its own rebuttal evidence and arguments.

## II. THE DANAHER DECLARATION DOES NOT SAVE DEFENDANT'S MOTION FOR NON-INFRINGEMENT OF THE '590 PATENT

In support of its Motion for Summary Judgment of the '590 patent, Defendant's moving papers relied on two exhibits – Exhibits 22 and 23. Exhibits 22 and 23 were submitted unauthenticated with defendant's motion over Inogen's objection. [Evid. Objections ISO Opposition at 7-9.] Defendant's Reply introduces a new declaration of Mr. Danaher attaching the unauthenticated chart of Exhibit 23. Thus, the new declaration purports to authenticate Exhibit 23.[1] However, the declaration of Mr. Danaher (including the attached Exhibit A) is inadmissible for at least two reasons: (1) it is untimely and (2) Mr. Danaher is not a proper lay witness or expert.

---

[1] Defendant has not even attempted to properly authenticate Exhibit 22. "It is well established that unauthenticated documents cannot be considered on a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F. 2d 1542, 1550 (9th Cir. 1990). Accordingly, Exhibit 22 must be stricken.

INOGEN'S RESPONSE TO THE NEW EVIDENCE OFFERED BY SEQUAL IN ITS REPLY     -1-     Case No. 09CV2391 H (JMA)
3931217_2.DOC

### A. THE DANAHER DECLARATION IS INAPPROPRIATE FOR A REPLY BECAUSE IT OFFERS NEW EVIDENCE THAT SHOULD HAVE BEEN ADDRESSED IN DEFENDANT'S OPENING BRIEF

An unauthenticated document cannot be considered on a motion for summary judgment. *Hal Roach Studios,* 896 F. 2d at 1550. Realizing this *after* filing its motion, Defendant has now attempted to authenticate Exhibit 23. But, its effort at this late stage is untimely because Defendant has attempted to cure an authentication problem in its Reply – an issue that was identified by Inogen – which it should have done in connection with its opening brief. Defendant has not even offered an explanation as to why it could not have offered Mr. Danaher's declaration in an attempt to timely authenticate Exhibit 23 in support of its opening brief. Thus, the supplemental Danaher declaration "address[es] issues which should have been addressed in the opening brief, and the new evidence is inappropriate for Reply." *Docusign,* 468 F. Supp 2d at 1307. Accordingly, Defendant should be precluded from relying on the newly filed Exhibit A because it is untimely. It should be stricken.

### B. THE DANAHER DECLARATION IS INADMISSIBLE BECAUSE HIS DECLARATION LACKS FOUNDATION FOR A LAY WITNESS AND MR. DANAHER IS NOT AN EXPERT IN MATERIAL CHARACTERIZATION

Even if this Court permits Defendant to file the Danaher declaration late, Mr. Danaher cannot be qualified as a lay witness or expert. The Danaher declaration is not authenticated, lacks foundation and is inadmissible.

Mr. Danaher is not the correct lay witness. Rule 602 of the Federal Rules of Evidence requires that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The Committee Note for Rule 602 states:

> [T]he rule requiring that a witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact. [2]

Here, the salesman – Mr. Danaher – could not have actually conducted the test; he is not trained to do so. What is more, Mr. Danaher does not even allege that he actually observed someone else

---

[2] Federal Rules of Evidence, Notes of Advisory Committee on Rules for Rule 602.

perform the test that produced the results depicted in his Exhibit A. The testing most certainly would have been conducted outside of the "business" areas where salesmen work and within the technical areas of a lab. Thus, Exhibit A has not been properly authenticated by a lay witness, and should be stricken. *Hal Roach Studios,* 896 F. 2d at 1551-2 (holding that because affiant did not have personal knowledge necessary to authenticate document, District Court erred in considering document on motion for summary judgment).

The absence of an authenticated declaration is particularly troubling here because Defendant has not even identified who performed the testing at issue. Thus, not knowing who conducted the test, what was tested, or what methods were used, Inogen is left to take for granted the very testing that Defendant has relied on as its sole basis to support its summary judgment motion on the issue. It is unfair to Inogen for Defendant to consistently withhold the methodology it uses to form its conclusions, knowing that it can cure any deficiency at a later point in time. Either Defendant does not know who performed the testing at issue, or has chosen to withhold the identity of the person(s) knowledgeable on the issue from cross-examination by Inogen. Neither is sufficient to excuse its failure to authenticate. The Defendant's failure to produce an authenticated declaration on the issue is fatal to its motion.

Mr. Danaher has not been qualified as an expert in material characterization. If foundational facts demonstrating relevancy or qualification are not sufficiently established, exclusion of proffered expert testimony is justified. *LuMetta v. U.S. Robotics, Inc.*, 824 F.2d 768, 771 (9th Cir. 1987). As stated in his declaration, Mr. Danaher is a "Senior Account Manager at UOP LLC" who currently "manag[es] the sales account between UOP and SeQual" and has "always" been on the business side, *i.e.*, the non-technical side. [Danaher Decl. ISO Reply at ¶ 2.] Unlike Dr. Tiwari who has spent his entire career in the field, Mr. Danaher is not an expert in material characterization. If he was, he would know that the method of "Inductively Coupled Plasma" is not capable of determining whether the Oxysiv MDX adsorption layer contains a lithium-exchanged FAU adsorbent that has less than .01% calcium and less than .01% magnesium. [Tiwari Decl. ISO Opposition at ¶ 5.] Because Mr. Danaher is not an expert, he is not capable of laying the necessary foundation for expert testimony, including the identification of exactly what

was tested and whether the methods used were reliably applied in this case. Fed. R. Evid. 702. In fact, the Defendant has not even attempted to qualify an expert on the issue. Instead, Defendant relies exclusively on impermissible attorney argument.

Exhibit A is clearly inadmissible as an improper form of expert and lay witness testimony and must be stricken. As a result, the Defendant is left with no evidence on the issue.

### C. ONLY INOGEN HAS OFFERED ADMISSIBLE EVIDENCE ON THE ISSUE OF INFRINGEMENT OF THE '590 PATENT

Inogen has provided evidence in the form of the MSDS report that shows no calcium or magnesium in the Oxysiv MDX adsorption layer. [Ex. 80 at 461.] The Defendant argued in its Reply that the absence of calcium and magnesium from the MSDS report carries no weight because MSDS reports are only required by OSHA for hazardous materials. [Reply at 2 (the MSDS report "is not a listing of all ingredients; it is only a document required by OSHA for hazardous materials.")] Although curiously not specifically stated, Defendant is inferring that magnesium and calcium are present, but that the report omits them as ingredients because they are not hazardous.

UOP, however, has a practice of reporting magnesium and calcium as ingredients when present in a sample, as shown in the various MSDS reports for different UOP adsorbent materials for medical oxygen concentrators. For example, the MSDS for UOP's Oxysiv 5XP and 5A reports "magnesium oxide," and "calcium oxide", respectively, as ingredients. [Decl. of M. Bresnahan ISO Inogen's Response to New Evidence at Exs. 84 & 85.] If the Oxysiv MDX adsorption layer did contain magnesium or calcium, UOP would have listed them as ingredients – just as they did for its Oxysiv 5A and Oxysiv 5 XP MSDS reports.

And, Defendant ignores the fact that the MSDS report for Oxysiv MDX lists water as an ingredient! [Ex. 80 at 461.] Defendant has not even argued that water is only listed because it is hazardous – because it is not. Thus, the admissible evidence, as opposed to Defendant's attorney argument, indicates that the MSDS report for Oxysiv MDX is a list of ingredients that does not contain magnesium or calcium. At a minimum, this raises a genuine issue of material fact on the issue precluding summary judgment.

III.  **THE SECOND RITTER DECLARATION DOES NOT SAVE DEFENDANT'S MOTION FOR NON-INFRINGEMENT OF THE '136 PATENT**

In support of its Motion for Summary Judgment, Defendant's Reply introduces a second declaration of Dr. Ritter. This declaration purports to operate in two ways. First, paragraphs 3 – 5 of the second declaration are offered by Defendant to cure the violations of Fed R. Evid. 702 (governing expert opinions) that plagues Dr. Ritter's first declaration. However, the declaration is filed too late for that purpose. Second, Defendant also relies on paragraphs 6 and 7 for providing yet another set of K and CCMTC values for the Eclipse. Yet, Dr. Ritter has once again failed to provide sufficient explanation to qualify his declaration as an expert opinion. Dr. Ritter' second declaration is inadmissible for both purposes.

A.  **¶¶ 3-5 OF THE SECOND RITTER DECLARATION ARE INADMISSABLE BECAUSE THEY OFFER NEW EVIDENCE THAT IS IRREELVANT AND SHOULD HAVE BEEN ADDRESSED IN DEFENDANT'S OPENING BRIEF IF AT ALL**

Inogen identified that Dr. Ritter's first declaration is inadmissible for evidentiary reasons because he failed to lay proper foundation under Fed. R. Evid. 702. [Evid. Objections ISO Opposition at 9.] Having learned of these fatal flaws from Inogen's opposition, objections, declarations, and other filed papers, Defendant now attempts to cure these deficiencies in the form a second declaration. [2nd Ritter Decl. at ¶ 5 ("The procedure I used in my Declaration dated February 19, 2010 was the procedure described in Exhibits 81 and 82.").] Thus, the supplemental declaration of Dr. Ritter addresses issues which should have been addressed in connection with Defendant's opening brief and, therefore, the new evidence is inappropriate for a Reply. *Docusign,* 468 F. Supp 2d at 1307. Defendant has not explained why Dr. Ritter could not have disclosed the model he used in his original declaration. This is particularly troubling here because his failure to do so forced Inogen to speculate as to the basis for Defendant's entire position as to why it does not infringe the '136 patent. Defendant should not be permitted to withhold information in its opening brief to its benefit, knowing all along that if necessary it can simply cure the deficiency in connection with its Reply. This is an abuse of the briefing process. The defendant should be precluded from relying on Dr. Ritter's newly filed second declaration to save its motion. This Court must strike paragraphs 3 – 5 of Dr. Ritter's second declaration.

However, even if this Court permits Defendant to rely on Dr. Ritter's second declaration, his declaration only clarifies that Dr. Ritter has in fact relied on the wrong model for determining K and CCMTC values of the '136 patent. Because Dr. Ritter relied on a model in his first declaration that is based on the concentration of nitrogen in the adsorbed phase rather than the gas phase, Dr. Ritter's first declaration does not provide K or CCMTC values within the meaning of the '136 patent. [Decl. of K. Knaebel ISO Opposition at ¶ 21.] And, Dr. Ritter's second declaration does not cure this fatal error, but confirms it. Thus, to the extent this Court determines that Dr. Ritter's late-filed second declaration has cured the deficiency of his first declaration – which is improper – Defendant has still not offered relevant evidence on the issue of infringement.

**B.   ¶¶ 6-7 OF THE SECOND RITTER DECLARATION ARE INADMISSIBLE BECAUSE THEY FAIL TO PROVIDE PROPER FOUNDATION FOR AN EXPERT OPINION**

"In the First and Federal Circuits, an expert's opinion expressed in an affidavit or a declaration, submitted for purposes of summary judgment, must be more than a conclusory assertion." *Insight Tech., Inc. v. SureFire, LLC*, 618 F. Supp. 2d 114, 118 (D.N.H. 2009). (holding expert declaration that failed to provide factual basis for conclusions was insufficient to support a motion for summary judgment on the issue of infringement). Here, realizing that his first declaration relied on the wrong model for determining K and CCMTC values within the meaning of the '136 patent, Dr. Ritter provides a second set of calculations alleging to show what Defendant now believes to be the K values and CCMTC values of the Eclipse. However, Dr. Ritter has again failed to provide a complete disclosure of the actual methods that he used to determine the K and CCMTC values he identifies in paragraphs 6 and 7 of his second declaration. In addition, Dr. Ritter has failed to accurately and reliably apply Equation (2) of the '136 patent. Fed. R. Evid. 702 (expert testimony must be based on facts and the methods used must be reliably applied); *Insight Tech.*, 618 F. Supp. 2d at 118. In fact, as explained by Dr. Knaebel, there are at least three problems with Dr. Ritter's data and calculations rendering his results scientifically "implausible." [Decl. of K. Knaebel ISO Inogen's Response to New Evidence at ¶¶ 8 - 13.] And so, here we are again – Inogen has been left to speculate as to the reasoning behind Dr. Ritter's conclusions. But, Defendant has now run out of time and cannot cure its second, deficient Ritter

declaration. The declaration must be stricken. In turn, this Court should deny Defendant's Motion for Summary Judgment of non-infringement of the '136 patent.

## IV. THE SECOND BIXBY DECLARATION DOES NOT SAVE DEFENDANT'S MOTION

Defendant has filed yet another untimely, impermissible declaration, here, a second declaration of Mr. Bixby. Inogen objected to the statements made by Mr. Bixby in his first declaration on the basis that his statements are conclusory, lack evidentiary support, lack foundation, are speculative, and/or are violative of the best evidence rule. [Evid. Objections ISO Opposition at 10-14.] Mr. Bixby has not even attempted to cure the deficiencies of his first declaration. Instead, Mr. Bixby rattles off another laundry list of objectionable statements. The following table lists the objectionable statements in the Bixby declaration and the reasons that such statements should not be considered by this Court:

| Second Declaration of Bixby | BASIS FOR STRIKING |
|---|---|
| 3. Oxysiv MDX, as received from the manufacturer, comes in a bead form with all aspects of the adsorbent in that bead – including any binder material and non-binder material in that adsorbent. | • This statement is an improper expert and lay opinion. Without establishing that Mr. Bixby has examined the material under a high powered electron microscope, how can Mr. Bixby possibly opine as to what are contained in a microscopic bead?<br>• The statement is hearsay unqualified by an exception and Mr. Bixby lacks personal knowledge. |
| 4. Prior to incoming air coming in contact with the Oxysiv MDX adsorbent in the Eclipse, the incoming air is pretreated to remove water. | • This statement is an improper expert and lay opinion. Mr. Bixby has not laid a proper foundation that he has ever examined Oxysiv MDX and established himself as an expert in such a way that would provide him with knowledge or understanding as to how the pretreatment layer of the Eclipse operates.<br>• This statement is misleading under Fed. R. Evid. 403. A key difference between the Omni and the Eclipse is that the Eclipse does not contain activated alumina. Yet, Mr. Bixby leads the court to believe that the pretreatment layer of the Eclipse and Omni are the same, which is contrary to the evidence.<br>• The statement is vague and ambiguous as to what is meant by "incoming air is pretreated |

| **Second Declaration of Bixby** | **BASIS FOR STRIKING** |
|---|---|
| | to remove water." And, how much of the water is removed? To the extent Mr. Bixby is opining that any amount of water is removed in a pretreatment layer during operation, the opinion is objectionable as lacking foundation for an expert opinion.<br><br>• The statement is hearsay unqualified by an exception and Mr. Bixby lacks personal knowledge. |
| 5. During operation of the Eclipse, when the incoming air is received by the Eclipse, that air interacts with the entire Oxysiv MDX adsorbent bead. | • This statement is an improper expert opinion and lay opinion on the issue of how air interacts within the device.<br><br>• This statement is misleading under Fed. R. Evid. 403 to the extent it implies that the binder material contained in the bead operates to remove nitrogen from air. Rather, the lithium-exchanged FAU contained in the Oxysiv MDX adsorption layer is what removes nitrogen from air.<br><br>• The statement is vague and ambiguous as to what is meant by "incoming air interacts." To the extent Mr. Bixby is opining on the binding of nitrogen to a zeolite, the opinion is objectionable as lacking foundation for an expert opinion.<br><br>• The statement is hearsay unqualified by an exception and Mr. Bixby lacks personal knowledge. |
| 6. The Eclipse 2® has the same adsorbent, the flow rates and the flow volume as the Eclipse®. | • Mr. Bixby has not laid a proper foundation that he has ever examined an Eclipse and established himself as an expert in such a way that would provide him with knowledge or understanding as to how any Eclipse versions operate.<br><br>• This statement is potentially prejudicial under Fed. R. Evid. 403 because SeQual is comparing two versions of the Eclipse, yet Inogen has specifically requested that it examine and test the Eclipse and Eclipse 2 so that it can make its own determination as to the similarities between the devices. Inogen reserves its right once it has had the opportunity to test the various working |

| **Second Declaration of Bixby** | **BASIS FOR STRIKING** |
|---|---|
| | versions to challenge that the Eclipse and the Eclipse 2 have a different adsorbent, flow rates and flow volume, or that other features between the versions are the same or different.<br><br>• This statement is vague and ambiguous, particularly with respect to what is meant by "adsorbent," "flow rates," and "flow volume." For one, flow rates could refer to the product flow rates, or could refer to the rate that the compressed air that is introduced into the adsorber vessels of the Eclipse versions.<br><br>• The statement is hearsay unqualified by an exception and Mr. Bixby lacks personal knowledge. |

Accordingly, Inogen requests that this court not consider Mr. Bixby's objectionable statements made in either his first or second declarations to support Defendant's Motion for Summary Judgment.

## V. CONCLUSION

Defendant has not met its burden to prevail on its Motion for Summary Judgment of invalidity of all four patents and non-infringement of the '136 and '590 patents. Even if Defendant did meet its burden, Inogen has presented at least a genuine issue of material fact with respect to each issue. This Court should deny Defendant's motion.

Dated: April 6, 2010

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By:/s/Matthew J. Bresnahan
    Matthew J. Bresnahan
    mbresnahan@wsgr.com

Attorneys for Plaintiff/Counterclaim Defendant
INOGEN, INC.

INOGEN'S RESPONSE TO NEW EVIDENCE
OFFERED BY SEQUAL IN ITS REPLY    -9-    Case No. 09CV2391 H (JMA)

## CERTIFICATE OF SERVICE

On April 6, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Andrew D. Skale (SBN 211096)<br>askale@mintz.com<br>Matthew C. Bernstein (SBN, 199240)<br>mbernstein@mintz.com<br>Ben L. Wagner (SBN 243594)<br>bwagner@mintz.com<br>MINTZ LEVIN COHN FERRIS<br>GLOVSKY AND POPEO PC<br>3580 Carmel Mountain Rd., Suite 300<br>San Diego, CA 92130<br>Telephone: (858) 314-1500<br>Facsimile:  (858) 314-1501 | Attorneys for Plaintiff<br>SEQUAL TECHNOLOGIES, INC |

/s/Matthew Bresnahan
Matthew Bresnahan, Esq.